IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARISTOTLE GARCIA, CARMELITA GARCIA and AILEEN LIGGAYU,

    Plaintiffs,

  v.

INDYMAC and NDEX WEST,

    Defendants.

                                      /

No. C 09-01738 CW

ORDER GRANTING DEFENDANT FDIC'S MOTION TO DISMISS

    Plaintiffs Aristotle Garcia, Carmelita Garcia and Aileen Liggayu charge Defendants IndyMac and NDEX West with violating California statutory and common law in connection with the sale of certain residential mortgage products. Defendant Federal Deposit Insurance Corporation, as duly appointed receiver for IndyMac Bank, has filed a motion to dismiss.[1] Plaintiffs oppose the motion. Having considered all of the papers filed by the parties, the Court GRANTS Defendant's motion.

BACKGROUND

    On July 25, 2005, Plaintiffs Aristotle Garcia, Carmelita Garcia and Aileen Liggayu received a home mortgage loan from

---

[1] The parties stipulated to substitute the FDIC in the place of Defendant IndyMac Bank.

IndyMac Bank with an annual percentage interest rate of 6.030.  The loan document states that Plaintiffs' initial monthly payments were $1,953.96 and that the payments might change on September 1, 2006 and on every twelfth month thereafter.  The loan document also notes that Plaintiffs' monthly payment cannot increase by more than 7.5% of the existing payment of principle and interest.

In April, 2008, Plaintiffs received a letter from IndyMac stating that their monthly payment would increase to $2,684.53 on June 1, 2008.  In June, 2008, Plaintiffs received another letter from IndyMac stating that their monthly payment would be increased to $4,618.36.  Plaintiffs could no longer afford the loan payments and contacted a third-party loan modification officer, Lina Villenas, to discuss their situation.  On September 14, 2008, Villenas called IndyMac to inquire about modifying Plaintiffs loan; however, IndyMac refused to renegotiate the loan terms.  In this conversation, IndyMac notified Villenas that it planned to short-sell the home.[2]  From October, 2008 to January, 2008, Villenas repeatedly called IndyMac to discuss Plaintiffs' situation but IndyMac would not renegotiate the loan.  On February 2, 4 and 11, IndyMac sent Plaintiffs loan "work-out" packages, which Villenas returned to IndyMac on February 12.[3]  On February 18, IndyMac notified Villenas that Plaintiffs' house had been sold.

A few months later, on July 11, 2008, the federal government, through the Office of Thrift Supervision, closed IndyMac Bank and

---

[2] A short sale is the sale of a house in which the proceeds fall short of what the owner still owes on the mortgage.

[3] Plaintiffs do not define loan "work-out" packages, but the Court infers that they are forms given to mortgagees to be filled out when seeking a loan modification.

appointed the FDIC as the receiver pursuant to 12 U.S.C. §§ 1464(d)(2)(A) and 1821(c)(5). As receiver, the FDIC's purpose was to liquidate the liabilities of the failed bank, and to administer the claims filed by creditors. The FDIC became the successor in interest to and assumed all rights, titles, powers, privileges and operations of IndyMac Bank. On the same date, the OTS chartered a new institution, IndyMac Federal Bank, to which it transferred all of the insured deposits and most of the assets of the failed institution. The OTS then appointed the FDIC as the conservator to operate the new institution. Thus, the FDIC was operating in the dual capacity as receiver of IndyMac Bank and conservator of IndyMac Federal Bank.

On March 2, 2009, Plaintiffs filed this case in San Mateo County Superior Court asserting violations of California Civil Code § 2923.5, Business and Professions Code § 17200 and negligence. On April 21, 2009, the FDIC filed its notice of removal.

The Court notes that the record does not contain any proof that Plaintiffs served Defendant NDEX WEST with the complaint within 120 days after the complaint was filed. Fed. R. Civ. P. 4(m). Plaintiff must provide the Court with this proof by the server's affidavit or risk having the complaint dismissed. Fed. R. Civ. P. 4(l).

## DISCUSSION

Once the FDIC becomes a receiver, all claims against a failed bank must be examined through the administrative claims process described in 12 U.S.C. § 1821(d)(3)-(20). This claims process is a mandatory prerequisite to judicial review. § 1821(d)(13)(D). That section provides:

3

> Except as otherwise provided in this subsection, no court shall have jurisdiction over
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The phrase "'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed." McCarthy v. FDIC, 348 F.3d 1075, 1078 (9th Cir. 2003). This "exhaustion requirement applies to any claim or action respecting the assets of a failed institution for which the FDIC is receiver." Id. at 1081 (emphasis in original).

On March 10, 2009, Plaintiffs were sent a proof of claim form and on April 28, 2009, the FDIC filed the instant motion to dismiss asserting that Plaintiffs have failed to exhaust their administrative remedy. On May 1, 2009 Plaintiffs returned the proof of claim form and on May 22, 2009 the FDIC informed Plaintiffs that their claim had been denied. However, this denial does not mean that the Court now has jurisdiction over the matter. Once a claim is denied, a claimant has sixty days from the date of the denial to:

> request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7)[4] or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and

---

[4] These subparagraphs state that claimants are entitled to either an administrative hearing or some form of alternative dispute resolution.

4

such court shall have jurisdiction to hear such claim). 12 U.S.C. § 1821 (d)(6)(A).  Therefore, at this juncture, Plaintiffs may either seek a second administrative review or commence a new suit in the United States District Court for the District of Columbia or the United States District Court for the Central District of California (the principal place of business for IndyMac is Pasadena, California).  Plaintiffs cannot continue litigating in this Court because they did not file their claim prior to the appointment of the FDIC as receiver.  Thus, the Court does not have jurisdiction to hear Plaintiffs' claims.

CONCLUSION

For the foregoing reasons, the Court grants Defendant FDIC's motion to dismiss, without prejudice to filing a new suit in accordance with this order.  The Court vacates the hearing scheduled for June 11, 2009.

IT IS SO ORDERED.

Dated: 06/08/09

CLAUDIA WILKEN
United States District Judge